UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
------------------------------------------------------------X

ENLIGHTEN IT CONSULTING, LLC      :
                  :
         Plaintiff,        :           **COMPLAINT**
                  :
         -vs-          :
                  :      Case No.: 20 Civ 2767
DIGITAL LANTERN, LLC, DIGITAL   :
LANTERN FEDERAL, LLC, ROSHAN  :
PUNNOOSE, and SEAN MONAGHAN  :
                  :
        Defendants.     :
                  :
------------------------------------------------------------x

Plaintiff, Enlighten IT Consulting, LLC ("Enlighten"), by its attorneys Schulte Roth & Zabel LLP, as and for its complaint against defendants Digital Lantern, LLC and Digital Lantern Federal, LLC (together "Digital Lantern"), Roshan Punnoose ("Punnoose") and Sean Monaghan ("Monaghan," together with Punnoose, the "Individual Defendants") (collectively "Defendants"), respectfully alleges as follows:

## NATURE OF ACTION

1.      Enlighten commences this action against Defendants to protect its confidential and proprietary information, including trade secrets, and its workforce, and to seek redress for the Defendants' unfair competition and violation of legal and contractual obligations. The Individual Defendants are former Enlighten employees who joined defendant Digital Lantern — a firm founded by another former Enlighten employee last year.

2.      Individual Defendants joined Digital Lantern to assist Plaintiff's direct competitors, defendant Digital Lantern and Deloitte Touche Tohmatsu ("Deloitte"), to unfairly compete with Plaintiff and to unlawfully share confidential and proprietary information, including trade secrets, acquired throughout Individual Defendants' employment with Plaintiff.

The Individual Defendants are helping Digital Lantern raid Plaintiff's personnel, misappropriate Plaintiff's confidential and proprietary work product, including trade secrets, and are using both the poached personnel and confidential and proprietary information to unfairly compete with Plaintiff.

3.     The Defendants' actions violate the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, *et seq*. ("DTSA") and the Maryland Uniform Trade Secrets Act, codified at Md. Code Ann., Comm. Law Art. § 11-201, *et seq*. ("MUTSA").  The Individual Defendants' actions also violate a number of contractual provisions to which they are bound and common law.

4.     Plaintiff seeks injunctive relief, damages, costs, and other relief deemed to be just and fair by the Court.

## PARTIES

5.     Enlighten is a limited liability company duly formed under the laws of Maryland, with an office located at 991 Corporate Blvd., Suite 350 Linthicum Heights, Maryland 21090.  It is a wholly-owned subsidiary of MacAulay-Brown Inc. ("MacB") and MacB is a wholly-owned subsidiary of Alion Science and Technology Corporation.

6.     Defendant Digital Lantern, LLC is a limited liability company organized under the laws of California with its principal place of business located at 8113 Ventnor Road, Pasadena, Maryland.

7.     Defendant Digital Lantern Federal, LLC is a limited liability company organized under the laws of California with its principal place of business located at 8113 Ventnor Road, Pasadena, Maryland.

8.     Defendant Punnoose is a former Enlighten employee who, upon information and belief, resides at 10806 Rockland Drive, Laurel, Maryland and is employed by Digital Lantern.

9.      Defendant Monaghan is a former Enlighten employee who, upon information and belief, resides at 5803 Kenmore Road, Baltimore, Maryland and is employed by Digital Lantern.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction, pursuant to 28 U.S.C. § 1331, of the cause of action that arises under the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, *et seq*.  This Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367(a), as they derive from a common nucleus of operative facts and otherwise form part of the same case or controversy.

11.      The Individual Defendants are subject to personal jurisdiction in this Court under Section 6-102(a) of the Annotated Code of Maryland, Courts & Judicial Proceedings Article because they are, upon information and belief, domiciled in Maryland.  The Individual Defendants also agreed to be bound to the laws of Maryland and expressly waived any objections to jurisdiction or venue in Anne Arundel County, Maryland.

12.      Digital Lantern is subject to personal jurisdiction in this Court under Section 6-102(a) of the Annotated Code of Maryland, Courts & Judicial Proceedings Article because it maintains its principal place of business in Maryland.

13.      Venue is properly laid in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

**Plaintiff and Its Relationship To The Individual Defendants**

14.     Enlighten is a software engineering company that provides critical Information Technology ("IT") services to support the Department of Defense ("DOD") with the nation's top security missions.  Among other things, Enlighten utilizes confidential and proprietary information, including trade secrets, and methods, to compete for and execute its customer contracts, including, for example, proprietary technology and software designs, marketing material and proposals to use in connection with bidding for governmental contracts, and information regarding the implementation of technological strategies and solutions for potential customers.  Once companies, like Enlighten, are awarded a customer contract by the government, they have the option to market and provide general IT services to government entities in connection with the awarded contract.

15.     To protect its confidential and proprietary information, including trade secrets, and its opportunity to fairly compete for government contracts, Plaintiff requires its employees to enter into strict confidentiality agreements prohibiting them from disclosing Plaintiff's trade secrets and confidential and proprietary information.  Certain employees are also prohibited from soliciting Plaintiff's employees and/or competing with Plaintiff for a period of time following their employment.

16.     Punnoose was employed by Enlighten from July 2014 to October 2019, as the Director of Machine Learning.  Punnoose was a member of Enlighten's leadership and technical teams and served as a Manager and mentor for the software development teams.  He also served as a technical contributor to proposals, a customer advocate, and contributed to Enlighten's roadmap and strategic vision.

17.     Monaghan was employed by Enlighten from April 2014 to May 2020 as a Principal Cloud Software Engineer.  Monaghan was a software team leader and a member of Enlighten's technical leadership team.  He also served as a technical contributor.

18.     Both Punnoose and Monaghan led Enlighten's Innovation Board which met once a month to discuss, assess, and validate possible innovation and independent research and development ideas.

19.     Digital Lantern was formed in August 2019 by Duane Shugars ("Shugars"), who previously had worked at Enlighten through July 2, 2019 and served as a Chief Strategy Officer and Chief Operating Officer as well as Senior Vice President and General Manager.  Shugars, Digital Lantern's President and CEO, served as one of Punnoose's and Monaghan's supervisors and worked closely with Punnoose and Monaghan in connection with the BDP Cyber Analytics Contract (as defined below) during his employment at Enlighten. Since Digital Lantern's formation, seven individuals have terminated their employment with Enlighten to join Digital Lantern, including the Individual Defendants as well as Steve Henderson (former Director of Data Science), John Stein (former Principal Cloud Engineer), Jon (Sage) Schoene (former Associate Data Scientist), Michael Barcarse (former Principal Software Engineer), and Ope Arowojolu (former Principal Cloud Engineer) (the "Former Employees"). On September 4, 2020, when Arowojolu resigned from Enlighten, he told Steve Wagner, Vice President of Enlighten, that he would "be going to Digital Lantern" and that "he had talked to Roshan [Punnoose] while being recruited."  Upon information and belief, in or around June and July of 2020, one or more of the Former Employees also solicited another Enlighten employee, Rick MacTurk, Remote Engineering Manager of Enlighten at the time, for the purpose of encouraging him to leave his employment at Enlighten and join Digital Lantern.  Upon

information and belief, in the course of that solicitation, one or more of the Former Employees

told MacTurk to wait until after a non-solicitation provision expired to join Digital Lantern.

Ultimately, MacTurk rejected the offer to join Digital Lantern.

**Relevant Agreements**

*The Employment Agreements*

20.     Monaghan and Punnoose executed employment agreements with

Enlighten on April 3, 2014 and July 21, 2014, respectively (the "Employment Agreements").

21.     The Individual Defendants each acknowledged, in the Employment

Agreements, that "as a result of [their] employment . . . [they would] be making use of,

acquiring, and adding to information of a special and unique nature and value relating to the

Company's trade secrets or other confidential information."

22.     The Individual Defendants also each agreed, pursuant to the Employment

Agreements, not to disclose Enlighten's trade secrets or confidential information.  The

Employment Agreements provide:

> As a material inducement to Company to enter into this Agreement, and to
> pay to Employee the compensation and other benefits set forth herein,
> Employee covenants acknowledges and agrees that he will not, at any time
> during or following his employment with Company, directly or indirectly,
> divulge or disclose, or employ for any purpose whatsoever, any such trade
> secrets or other confidential information which have been obtained by or
> disclosed to him as a result of or related to his employment by the
> Company.

23.     The Employment Agreements further provide that:

> The Employee acknowledges and agrees that the Company is entitled to
> prevent the disclosure of its Confidential Information. Accordingly, in
> consideration of the Company's agreement to continue to employ the
> Employee and pay the Employee compensation for services rendered, the
> Employee agrees at all times during employment with the Company and
> thereafter to hold in strictest confidence, and not to disclose or allow to be
> disclosed to any person, firm, or corporation and not to disclose, use,
> copy, publish, summarize, or remove from the premises of the Company

any Confidential Information, including Confidential Information developed by the Employee except (a) as necessary to carry out the Employee's assigned responsibilities as a Company employee, and (b) after termination of employment, only as specifically authorized in writing by Shawn Justice, the President of the Company.

24.     According to the Employment Agreements, "Confidential Information" includes, *inter alia*, "trade secrets, . . . marketing arrangements, business plans, . . . training manuals, . . . product and service development plans, market strategies . . . and other competitively sensitive information."

25.     The Individual Defendants also each agreed, pursuant to the Employment Agreements, not to solicit, recruit, or attempt to solicit or recruit employees of Enlighten for the purpose of encouraging such employees to leave their employment.  Specifically, the Employment Agreements provide that:

During the Employee's employment with the Company and for a period of two (2) years after the termination of the Employee's employment with the Company, regardless of whether such termination is voluntary or involuntary or with or without cause, the Employee will not, without the prior written consent of the Company, solicit, recruit, or attempt to solicit or recruit, directly or indirectly, any employee, or prospective employee of the Company, for the purpose of encouraging such employees, or prospective employees to leave their or to refrain from employment with the Company.

*Non-Disclosure Agreements*

26.     Monaghan and Punnoose were also required, as a condition of their employment with Enlighten, to execute separate nondisclosure agreements (the "NDAs").  They executed the NDAs on April 3, 2014 and July 21, 2014, respectively.

27.     The NDAs require Monaghan and Punnoose, among other things, to hold and maintain Protected Information (as defined therein) "in the strictest confidence for the sole and exclusive benefit" of Enlighten.  "Protected Information" is defined in the NDAs as "all

information or material that has or could have commercial value or other utility to the employee or a company competitor."

28.     The NDAs provide that "[t]he nondisclosure provisions of this Agreement shall survive the termination of this Agreement and Employee's employment relationship with Company.  Employee's obligation to hold Protected Information in confidence shall remain in effect until the Protected Information no longer qualifies as a trade secret or in the case of government information until government deters that such information no longer requires protection."

*Retention Bonus Agreement*

29.     On March 15, 2019, Punnoose executed a Retention Bonus Agreement prohibiting him from competing with Enlighten for one year following the termination of his employment with Enlighten (the "Retention Agreement").

30.     In accordance with the Retention Agreement, Enlighten paid Punnoose $31,433.46, the vested portion of his bonus payment, in addition to his base salary, on October 7, 2019.  In exchange, he agreed to be bound as follows:

> You acknowledge and agree that by virtue of your employment with the Company you have or will have access to valuable confidential and proprietary information. You acknowledge and agree that the Company has legitimate business interests in assuring that your knowledge of the Company and its confidential and proprietary information is not disclosed or converted to the use of entities or individuals in competition with the Company. Therefore, in consideration of your execution of this Agreement and any benefits you might receive hereunder, you agree that during your employment with the Company and for one (1) year from the date of either (a) the Company's termination of your employment for cause, or (b) your decision to voluntarily terminate employment, you will not, directly or indirectly, through others, in any other capacity, perform any services that are the same or similar in function or purpose to the services you performed for the Company in the last year of your employment for any company or business that competes with the Company in connection with any contract or other business arrangement in which you are or were involved or acquired confidential information

about during the last year of your employment with the Company.

*Proprietary Information Agreement*

31.     On October 15, 2019, Punnoose also executed a Proprietary Information Agreement (the "Proprietary Information Agreement") with MacB, in connection with his employment at Enlighten.

32.     Pursuant to the Proprietary Information Agreement, Punnoose agreed that he would "not, at any time during [his] employment, or after termination thereof, for any reason, either directly or indirectly, reveal, divulge, or make known to any person, corporation, or entity any [confidential information, proprietary information, and trade secrets], or use such information, either for my own benefit or the benefit of others."  The Proprietary Information Agreement provided that such information includes, but is not limited to, pricing methods and strategies, training materials, specifications, and marketing strategies "relating to the business of [MacB]."

**The BDP Cyber Analytics Contract**

33.     In or around 2013, Enlighten created the Big Data Platform ("BDP").  The BDP is a technology platform that supports large scale data analysis, cyber security capabilities, and visualizations.  Enlighten has serviced Army Cyber through several agreements since 2014.  Among those was an agreement to provide services under the BDP for Army Cyber (the "BDP Cyber Analytics Contract").  Army Cyber, a division of the United States Army, acts as the nation's cyber security defense team by integrating and conducting cyberspace, electronic warfare, and information operations.  Pursuant to the BDP Cyber Analytics Contract, Enlighten was contracted to develop and implement mechanisms to secure Army Cyber's mission systems and detect anomalies or indications of malice.  While Enlighten continues to service Army Cyber on other capabilities associated with the BDP, it ceased performance as Army Cyber's

cyberspace analytics service provider in connection with the BDP Cyber Analytics Contract in December 2018.

34.     On December 12, 2018, Deloitte, one of Plaintiff's direct competitors, was awarded the BDP Cyber Analytics Contract, replacing Enlighten as Army Cyber's BDP cyberspace analytics service provider.

35.     Deloitte was initially set to continue to serve as Army Cyber's BDP cyberspace analytics service provider until November 11, 2023.  Upon information and belief, given Deloitte's performance, however, Army Cyber intends to end this effort no later than March 2021, the end of the base performance period, and is currently re-competing the BDP Cyber Analytics Contract.

36.     Upon information and belief, a new award of the BDP Cyber Analytics Contract is expected in January 2021.

**The COIP Proposals**

37.     On August 25, 2016, Enlighten submitted two proposals to Army Cyber regarding the Cyberspace Operations Integration Platform ("COIP Proposals").  The COIP Proposals marketed a service to Army Cyber that Enlighten believed was crucial in terms of securing Army Cyber's mission systems.  In the COIP Proposals, Enlighten outlined, in detail, a technical solution to better secure Army Cyber's mission systems — specifically an integration between security orchestration ("SOAR") and the BDP technology that Enlighten had created and was already using to service Army Cyber pursuant to the BDP Cyber Analytics Contract.

38.     SOAR is a technology that enables security automation and speeds up the incident response process by replacing repetitive, manual tasks with automated workflows. Enlighten proposed the integration of this technology with the BDP to better analyze and more quickly find anomalies in the data set.

39.     Given Enlighten's expertise with the BDP technology, it was able to create this solution to leverage the BDP technology's existing capabilities and save significant development resources while also reducing the long-term sustainment costs for Army Cyber. The COIP Proposals included detailed ideas, strategies, and goals for implementing the integration, and operates as a guide for developing and implementing the solution.  The information contained in the COIP Proposals are Enlighten's confidential and proprietary information, including trade secrets, and are strictly confidential.  Plaintiff's competitors are unable to gain access to the COIP Proposals.  Further, the COIP Proposals are still very valuable to Enlighten because Army Cyber has the option to have Enlighten develop the solutions contained in the COIP Proposals until August 25, 2026.

40.     The Individual Defendants were aware of the confidential and intricate details in the COIP Proposals, including the steps and considerations for eventual implementation of the outlined solution.  Punnoose contributed to, and had access, to the COIP Proposals during his tenure at Enlighten (including during his last year of employment at Enlighten).  Monaghan also had access to, and contributed to, the COIP Proposals during his employment with Enlighten, by drafting a detailed diagram of the proposed integration platform.

41.     One of the COIP proposals identifies both Punnoose and Monaghan as "key personnel" in creating the COIP Proposal.

**The Individual Defendants' Departures From Enlighten**

42.     As set forth above in Paragraph 19, Shugars, a Former Employee, formed Digital Lantern in August 2019, and currently serves as its President and CEO.

43.     On October 2, 2019, Punnoose informed Enlighten's Vice President, Steve Wagner and Enlighten's Senior Program Cost and Control Analyst, Laurie Scott, via email, that he was resigning from Enlighten.  In the email, Punnoose represented that he was resigning due to "difficulties with [his] family schedule," and that he wanted to "take a break and stay at home with [his] children."  On October 15, 2019, Punnoose officially resigned from his employment at Enlighten.

44.     Monaghan resigned from Enlighten on May 11, 2020.

45.     On their resignation dates, Punnoose and Monaghan executed Security Debriefings which reiterated the requirement to uphold their obligations under the NDAs they had previously executed, concerning the protection of any classified information previously released to them or accessible by them.

46.     By signing the Security Debriefings Punnoose and Monaghan, "agreed to 1) protect any classified information released to [them]; and 2) to comply with the disclosure rules."  The Security Debriefings also required Punnoose and Monaghan to "safeguard any classified information [they have] had access to during [their] employment or may become aware of."  The explicit terms of the Security Debriefing provide that these obligations are "lifetime conditions."

47.     Upon information and belief, after his resignation in October 2019, Punnoose began providing Digital Lantern consulting services in connection with the BDP Cyber Analytics Contract as an independent contractor (the "Consulting Services").  Upon information and belief, Punnoose provided these Consulting Services until July 2020.  The Consulting

Services were similar or identical in nature to the services that Punnoose provided during his employment with Enlighten, including during his last year of employment at Enlighten.

48.     In July 2020, Punnoose was hired by Digital Lantern as a Senior Software Engineer and, upon information and belief, he continued to service the BDP Cyber Analytics Contract for Digital Lantern.

49.     Upon information and belief, on or around May 12, 2020, Monaghan was also hired by Digital Lantern to assist with providing services in connection with the BDP Cyber Analytics Contract.

50.     Upon information and belief, Digital Lantern's hiring of Punnoose and Monaghan is part of a larger effort by Digital Lantern to unlawfully poach Enlighten's employees and business.

51.     All of the Former Employees, including the Individual Defendants, worked on the BDP Cyber Analytics Contract while employed by Enlighten.

52.     Upon information and belief, all Former Employees currently work or plan to work for Digital Lantern, and provide services to Deloitte through Digital Lantern, in connection with the BDP Cyber Analytics Contract.

**The Defendants Have Unlawfully Raided Plaintiff's Business And Are Unfairly Competing With Plaintiff**

53.     Government customers, like Army Cyber, retain the ability to suspend contracts, like the BDP Cyber Analytics Contract, at any time, including in the event that it is unsatisfied with the contractor's performance.  The ability of the contractor to present and implement innovative and useful IT services successfully is directly correlated to the likelihood of the contractor to be able to retain such contract and be awarded future contracts.

54.     Upon information and belief, Deloitte is at risk of losing the BDP Cyber Analytics Contract with Army Cyber in connection with its cyber analytics services, and subcontracted with Digital Lantern to assist it in rendering services pursuant to the BDP Cyber Analytics Contract because of Digital Lantern's knowledge of Enlighten's confidential and proprietary information, including trade secrets, about the BDP technology that its employees worked on while employed by Enlighten.  The Individual Defendants, who work for Digital Lantern, are assisting in these efforts.

55.     On August 27, 2020, Punnoose attended a meeting with Army Cyber on behalf of Deloitte and Digital Lantern (the "Customer Meeting").  Wagner, Vice President of Enlighten, was also in attendance.  At the Customer Meeting, Punnoose pitched Army Cyber services that were substantially similar or identical to those services that Enlighten had previously provided (with his help) during his employment with Enlighten.  His presentation — made for Deloitte and Digital Lantern's benefit — contained Enlighten's confidential and proprietary information, including trade secrets.  Specifically, Punnoose presented a live demonstration of the same solution outlined in the COIP Proposals (the "Finished Implementation"), a solution that was submitted to Army Cyber by Enlighten in 2016.

56.     Throughout his presentation of the Finished Implementation, Punnoose specifically referred to and relied on the exact same ideas, concepts, and solutions contained in the COIP Proposals.  He discussed and demonstrated intricate technical details and approaches that were specifically included and could only be found in the COIP Proposals.  The Finished Implementation appears to be based on diagrams that were included in the COIP Proposals. Upon information and belief, Monaghan — who helped design the diagrams contained in the

COIP Proposals — helped Punnoose develop the Finished Implementation presented at the

Customer Meeting.

57.      By presenting the Finished Implementation at the Customer Meeting,

Punnoose used the COIP Proposals, Enlighten's confidential and proprietary information,

including trade secrets, for the advantage of defendant Digital Lantern and Deloitte to the

substantial detriment of Enlighten.  This would cause Deloitte and/or Digital Lantern to be the

preferred contractor for follow-up work even though such work is not included in the scope of

the BDP Cyber Analytics Contract.  Army Cyber has no need to entertain Enlighten's COIP

Proposals now that Punnoose has presented it with a finished working version on behalf of

Deloitte.

58.      Upon information and belief, Deloitte is using Digital Lantern —

specifically, the Individual Defendants and Enlighten's confidential and proprietary information,

including trade secrets, that the Individual Defendants are misappropriating — to increase its

chances of retaining the current contract and/or obtaining a future contract award with Army

Cyber.

## **COUNT I**

### **(Defend Trade Secrets Act Violation)**
### **(All Defendants)**

59.      Plaintiff repeats and realleges each and every allegation contained in the

preceding paragraphs of this Complaint with the same force and effect as if set forth at length

here.

60.      Plaintiff possesses trade secrets and confidential and proprietary

information that it utilizes in its business.  These trade secrets and confidential and proprietary

information give Plaintiff an advantage over competitors who do not know them.  Plaintiff

derives independent economic value from these trade secrets not being generally known to or readily ascertainable by others.  Plaintiff's trade secrets and confidential and proprietary information relate to products and services intended to be sold or used in interstate commerce. Plaintiff offers its technologies embodying its confidential, proprietary, and trade secret information throughout the United States.

61.      These trade secrets and confidential and proprietary information include competitive information regarding services provided in connection with the BDP Cyber Analytics Contract and the information contained in the COIP Proposals which provide Plaintiff with substantial commercial advantages over its competitors, such as Deloitte, in the information technology and services field as described in paragraphs 14, 37, 39, and 40 of this Complaint.

62.      Plaintiff has made reasonable efforts to maintain the secrecy of the foregoing trade secrets and confidential and proprietary information, including, without limitation, requiring its employees to enter into agreements to keep confidential and refrain from using for their own benefit or the benefit of others Plaintiff's trade secrets.

63.      Punnoose and Monaghan acquired Plaintiff's trade secrets and confidential and proprietary information under circumstances giving rise to a duty to maintain their secrecy because of the confidentiality requirements of several employment agreements referenced in paragraphs 21, 22, 23, 24, 26, 27, 28, 30, 32, 45, and 46 of this Complaint.

64.      The Defendants misappropriated such trade secrets and confidential and proprietary information, without permission, at the Customer Meeting, when Punnoose utilized and relied on the information contained in the COIP Proposals to implement and present the same solution proposed by Enlighten in 2016 to the same customer (Army Cyber) on behalf of Digital Lantern and Deloitte.  Upon information and belief, Monaghan misappropriated such

trade secrets and confidential and proprietary information, without permission, by relying on the information contained in the COIP Proposals in assisting Punnoose to develop the Finished Implementation for the Customer Meeting.

65.     The Defendants misappropriated such trade secrets and confidential and proprietary information for their and Deloitte's advantage and to the detriment of Plaintiff.

66.     The Defendants' actions constitute misappropriation of Plaintiff's trade secrets and confidential and proprietary information under the Defend Trade Secrets Act, 18 U.S.C. § 1832, *et seq*.

67.     The Defendants are likely to continue to wrongfully utilize such trade secrets and confidential and proprietary information throughout their continued work in connection with the BDP Cyber Analytics Contract.  The Defendants' use and threatened use of Plaintiff's trade secrets and confidential and proprietary information has caused, and will continue to cause, both irreparable injury and damages to Plaintiff.

68.     Plaintiff is entitled to damages for the Defendants' misappropriation of Plaintiff's confidential and proprietary information, including trade secrets.

69.     Plaintiff is also entitled to permanent injunctive relief prohibiting Defendants from misappropriating (or enabling others to access or use) Plaintiff's trade secrets and confidential and proprietary information.

70.     Plaintiff does not have a complete adequate remedy at law.  Specifically, the total of the damages caused by Defendants' actions are difficult to ascertain and, unless injunctive relief is granted as prayed for herein, the Defendants will continue to injure Plaintiff's prospective business.

## COUNT II

### (Maryland Uniform Trade Secrets Act Violation)
### (All Defendants)

71.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if set forth at length here.

72.     Plaintiff possesses trade secrets and confidential and proprietary information that it utilizes in its business.  While employed by Enlighten, Punnoose and Monaghan had access to such trade secrets and confidential and proprietary information, including, but not limited to, the information contained in the COIP Proposals.  The foregoing trade secrets and confidential and proprietary information are of great value to Plaintiff and are not readily ascertainable through other proper means.  The foregoing trade secrets and confidential and proprietary information give Plaintiff an advantage over competitors who do not know them.

73.     Plaintiff has made reasonable efforts to maintain the secrecy of the foregoing trade secrets, including, without limitation, requiring its employees to enter into agreements to keep confidential and refrain from using for their own benefit or the benefit of others Plaintiff's trade secrets.

74.     Defendants wrongfully utilized such trade secrets and confidential and proprietary information, without permission, at the Customer Meeting, when Punnoose utilized and relied on the information contained in the COIP Proposals to implement and present the same solution proposed by Enlighten in 2016, to the same customer (Army Cyber) on behalf of Digital Lantern and Deloitte.

75.     Upon information and belief, Monaghan wrongfully utilized such trade secrets and confidential and proprietary information, without permission, by relying on the information contained in the COIP Proposals in assisting Punnoose develop the Finished Implementation for the Customer Meeting.

76.     The Defendants' actions violate the Maryland Uniform Trade Secrets Act, codified at Md. Code Ann., Comm. Law Art. § 11-201, *et seq*.

77.     The Defendants knew or should have known they had a duty to keep confidential such trade secret information and use it only for the benefit of Plaintiff or as authorized by Plaintiff.

78.     The Defendants' use and threatened use of Plaintiff's trade secrets and confidential and proprietary information has caused, and will continue to cause, both irreparable injury and damages to Plaintiff.

79.     Plaintiff is entitled to damages for the Defendants' misappropriation of Plaintiff's confidential information and proprietary information, including trade secrets.

80.     Plaintiff is also entitled to permanent injunctive relief prohibiting Defendants from misappropriating (or enabling others to access or use) Plaintiff's trade secrets and confidential and proprietary information.

81.     Plaintiff does not have a complete adequate remedy at law.  Specifically, the total of the damages caused by Defendants' actions are difficult to ascertain and, unless injunctive relief is granted as prayed for herein, the Defendants will continue to injure Plaintiff's prospective business.

## COUNT III

### (Breach of Contract – Non-Solicitation)
### (Punnoose)

82.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if set forth at length here.

83.     Punnoose agreed to abide by the terms of the Employment Agreement with Enlighten, which constituted a valid contract and imposes upon Punnoose contractual obligations, including a covenant not to solicit, recruit or attempt to solicit or recruit employees for the purpose of encouraging such employees to leave their employment, effective through October 15, 2021.

84.     Upon information and belief, Punnoose breached this contractual obligation by illegally attempting to solicit and recruit Rick MacTurk, an Enlighten employee at the time, for the purpose of encouraging him to leave his employment with Enlighten.

85.     Upon information and belief, Punnoose breached this contractual obligation by unlawfully soliciting and recruiting former Enlighten employee, Monaghan, for the purpose of encouraging him to leave his employment with Enlighten and inducing him to join Digital Lantern.

86.     Upon information and belief, Punnoose breached this contractual obligation by illegally soliciting and recruiting former Enlighten employee, Ope Arowojolu, for the purpose of encouraging him to leave his employment with Enlighten and inducing him to join Digital Lantern.

87.     Upon information and belief, Punnoose may have illegally solicited and recruited other Former Employees for the purpose of encouraging them to leave their employment with Enlighten and join Digital Lantern.

88.     Punnoose's actions have substantially harmed Plaintiff, restricting its ability to complete currently funded work that competes with companies like Digital Lantern and Deloitte.

89.     As a result, Plaintiff is entitled to damages and injunctive relief.

## COUNT IV

### (Breach of Contract – Non-Compete)
### (Punnoose)

90.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if set forth at length here.

91.     Punnoose agreed to abide by the terms of the Retention Agreement with Enlighten, which constituted a valid contract and imposes upon Punnoose contractual obligations, including a covenant not to compete, effective through October 15, 2020.  This provision not to compete is reasonable and no greater than fairly required to protect and preserve Plaintiff's legitimate protectable interests.

92.     Punnoose materially breached this restrictive covenant under the Retention Agreement by providing services for Digital Lantern and Deloitte (which directly compete with Plaintiff) prior to the expiration of the one-year non-compete period.

93.     Upon information and belief, Punnoose (serving as an independent contractor) breached this contractual obligation by providing Consulting Services to Digital

Lantern in connection with the BDP Cyber Analytics Contract after his resignation from Enlighten.

94.     Punnoose further breached this contractual obligation after he was hired by Digital Lantern as an employee, by providing services to Digital Lantern and Deloitte in connection with the BDP Cyber Analytics Contract.  In providing services to Digital Lantern and Deloitte under the BDP Cyber Analytics Contract, Punnoose utilized and relied on his specialized skills and Plaintiff's trade secrets and confidential and proprietary information (specifically the COIP Proposals), both of which he acquired as a consequence of his employment with Enlighten.

95.     As a result of his actions, Punnoose violated his restrictive covenant not to compete (effective through October 15, 2020).

96.     This violation has substantially harmed Plaintiff, entitling it to damages, including a return of the vested portion of the bonus payment made by Enlighten to Punnoose on October 7, 2019 in the amount of $31,433.46, in connection with the obligations set forth in the Retention Agreement.

## COUNT V

### (Breach of Contract – Confidentiality and Non-Disclosure Obligations)
### (Individual Defendants)

97. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if set forth at length here.

98. Punnoose agreed to abide by the terms of the Employment Agreement, the NDA and the Proprietary Information Agreement, which constitute valid contracts and impose upon Punnoose contractual obligations.  Monaghan agreed to abide by the Employment Agreement and the NDA, which constitute valid contracts and impose upon Monaghan contractual obligations.  Both Punnoose and Monaghan also executed Security Debriefings, referenced previously within the Complaint, which reiterated the requirement to uphold their obligations under the NDAs that they signed, concerning the protection of any classified information previously released to them or accessible by them.  These agreements included provisions governing the non-disclosure of Plaintiff's confidential and proprietary information, including trade secrets.

99. While employed by Plaintiff, Individual Defendants had access to trade secrets, confidential and proprietary information, including, but not limited to, the information contained in the COIP Proposals.  The foregoing confidential and proprietary information, including trade secrets, are of great value to Plaintiff and give Plaintiff an advantage over competitors.

100. Plaintiff relies on confidential information and proprietary methods, including trade secrets and processes in developing, implementing and maintaining its services. Plaintiff has made reasonable efforts to maintain the secrecy of the foregoing trade secrets,

confidential and proprietary information, including, without limitation, requiring its employees to enter into agreements to keep confidential and refrain from using such confidential and proprietary information, including trade secrets, for its employees' own benefit or the benefit of others.  Plaintiff derives independent commercial value from this confidential and proprietary information, including trade secrets, not being generally known to or readily ascertainable by others and its efforts to maintain the confidentiality of this information (including the confidential processes behind the technology they offer) are key to its success in the IT industry.

101.    Punnoose materially breached the Employment Agreement, the NDA, and the Proprietary Information Agreement by utilizing and relying on the information contained in Enlighten's confidential COIP Proposals to create and present the Finished Implementation of the same solution presented by Enlighten in 2016, to the same customer, Army Cyber, at the Customer Meeting on behalf of Digital Lantern and Deloitte.  Upon information and belief, Monaghan materially breached the Employment Agreement and the NDA by utilizing and relying on the information contained in the COIP Proposals in assisting Punnoose to develop the Finished Implementation that Punnoose presented at the Customer Meeting.  Upon information and belief, the Finished Implementation presented by Punnoose at the Customer Meeting would not have been possible without Punnoose's and Monaghan's prior development of specialized skills, experience and familiarity with the intricacies of the BDP technology, and access to the COIP Proposals, all gained as a consequence of their former employment with Enlighten.

102.    Absent injunctive relief, Plaintiff will continue to suffer irreparable harm as a result of Individual Defendants' misappropriation of Plaintiff's confidential and proprietary information, including trade secrets, for which there is no complete adequate remedy at law.

103.    Individual Defendants' actions have substantially harmed Plaintiff.  As a result, Plaintiff is entitled to permanent injunctive relief prohibiting Individual Defendants from misappropriating (or enabling others to access or use) Plaintiff's confidential and proprietary information, including trade secrets, and Plaintiff is entitled to damages in an amount to be determined by this Court.

## COUNT VI

### (Unfair Competition)
### (All Defendants)

104.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if set forth at length here.

105.    Plaintiff invested substantial time and resources in developing its trade secrets, confidential and proprietary information, including, but not limited to, the information in the COIP Proposals.

106.    Upon information and belief, the Individual Defendants were disgruntled with Plaintiff, their former employer, and intentionally misappropriated Plaintiff's confidential and proprietary information, including trade secrets, in order to benefit Plaintiff's direct competitors, defendant Digital Lantern and Deloitte.

107.    Defendants misappropriated such confidential and proprietary information, including trade secrets, without permission, at the Customer Meeting, when Punnoose utilized and relied on the information contained in the COIP Proposals to implement and present the same solution proposed by Enlighten in 2016 to the same customer (Army Cyber) on behalf of Digital Lantern and Deloitte.  Upon information and belief, Monaghan misappropriated such trade secrets and confidential and proprietary information, without permission, by relying on the information contained in the COIP Proposals in assisting Punnoose develop the Finished Implementation for the Customer Meeting.

108.    Defendants thus damaged and jeopardized Plaintiff's business through unfair methods.

109.    Defendants acted without justification or permission in misappropriating Plaintiff's confidential and proprietary information, including trade secrets, and their actions caused and will continue to cause substantial harm to Plaintiff, entitling Plaintiff to injunctive relief.

**WHEREFORE,** Plaintiff respectfully requests the following judgment in favor of Plaintiff:

A.    enjoin Punnoose, through the term of his non-solicitation provision (i.e., through October 15, 2021), from soliciting Plaintiff's employees;

B.    enjoin Punnoose, through the term of his non-compete (*i.e.*, through October 15, 2020), from providing Digital Lantern, Deloitte, or any other competitor services in connection with the BDP Cyber Analytics Contract;

C.    extend the restrictive period of each restrictive covenant violated by Punnoose by a period of time equal to the period of time of his violation;

D.    order Defendants to immediately cease using Plaintiff's confidential information and proprietary information, including trade secrets;

E.    award Plaintiff compensatory damages in an amount to be determined at trial;

F.    award Plaintiff its reasonable expenses, including the reasonable attorneys' fees and costs, incurred in connection with seeking this relief;

G.    award Plaintiff such other and further relief as the Court deems proper.


Great Falls, Virginia

Dated:  September 22, 2020

SCHULTE ROTH & ZABEL LLP

By:    */s/ Adam Hoffinger*

Adam Hoffinger
Ronald E. Richman
(*pro hac vice* forthcoming)
Taleah E. Jennings
(*pro hac vice* forthcoming)
Max Garfield
(*pro hac vice* forthcoming)

919 Third Avenue
New York, New York 10022
(212) 756-2000 (telephone)
(212) 593-5955 (facsimile)

Adam.Hoffinger@srz.com
Ronald.Richman@srz.com
Taleah.Jennings@srz.com
Max.Garfield@srz.com

*Attorneys for Plaintiff*